IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-01213-PSF-MJW

ALLSTATE INDEMNITY COMPANY,

    Plaintiff,

v.

RICARDO E. SALAZAR, as Conservator and Guardian for
LEANN SALAZAR, an incapacitated person,

    Defendant.

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

This matter comes before the Court on the motion of Plaintiff Allstate Indemnity Company ("Allstate") to dismiss all counterclaims of Defendant Ricardo Salazar, who appears as conservator and guardian for Leann Salazar (collectively "Salazar Defendants") filed Aug. 22, 2006 (Dkt. # 16). The motion is fully briefed and ripe for determination. For the reasons set forth below, the Court denies the motion, except as to the counterclaim alleging abuse of process, which is dismissed.

**I.    BACKGROUND**

This case arises from a motor vehicle accident that occurred on March 20, 1999, when Leann Salazar was severely injured in a multi-vehicle automobile accident. Salazar subsequently filed suit against Cortlandt Dietler ("Dietler"), the driver of one of the cars involved in the accident. At the time of the accident, Leann Salazar was insured by an Allstate automobile policy in effect from December 1998 to June 1999.

In addition to filing a lawsuit seeking damages from Dietler, Leann Salazar obtained personal injury protection ("PIP") benefits from Allstate pursuant to her automobile policy.

Dietler was insured for liability under a Safeco Insurance Company ("Safeco") policy, and in 2002, Dietler, Safeco, and Salazar entered into settlement negotiations. According to the allegations of the Salazar Defendants' counterclaims, which have not yet been responded to by Allstate and must be taken as true for purposes of this motion, during a settlement conference on November 13, 2002, Dietler and Safeco advised Salazar that she was entitled to additional or extended PIP benefits from Allstate covering such things as wage loss and medical/rehabilitation reimbursements because Allstate had failed to offer her the extended PIP coverage as required by Colorado law in effect at the time of her policy renewal (Counterclaim (Dkt. # 13), ¶ 13).

According to the counterclaims, by letter faxed to the parties at the settlement conference on November 13, 2002, an Allstate staff claim analyst confirmed this position, stating in the letter that Salazar was entitled to "[e]xtended PIP Benefits as afforded under the Colorado Auto Accident Reparations Act," including "[w]age loss benefits not subject to time (except death) at the rate of 100% of the first $125 and 85% of the remaining," as well as "[m]edical/rehabilitation coverage not subject to time (except death) or cost limitations except that they shall still be subject to reasonable, necessary and accident relatedness." (Counterclaim, ¶ 14). The counterclaim alleges that the Allstate analyst who wrote this letter was acting within the course and scope of her employment with Allstate (*id.*, ¶ 15).

The liability limit of Dietler's policy was one million dollars. Defendants allege that in reliance on this letter and the representations contained therein, they settled their claims against Dietler for a confidential amount, but for less than they would have settled but for the representations in Allstate's letter (*id.*, ¶ 16). According to the counterclaims, Allstate began paying the extended PIP benefits to Salazar consistent with the promises and representations set forth in the November 13, 2002 letter and did so for more than three years after the settlement of the Dietler lawsuit (*id.*, ¶ 17).

Defendants further allege that in 2005, Allstate attempted to settle Salazar's extended PIP benefits claim for an amount less than the remaining value of the claim (*id.*, ¶ 18). After the Salazar Defendants refused to settle the extended PIP benefits claim for the amount offered, Allstate commenced the declaratory judgment action in the instant case on June 23, 2006. Allstate apparently has continued to pay the extended PIP benefits in accordance with the November 2002 letter while it pursues this litigation.

Allstate's complaint for declaratory relief seeks a declaration that it is no longer required to pay Salazar extended PIP benefits, asserting as reasons that Salazar declined its lawful offer of extended PIP coverage at the time of her policy renewal, that intervening events other than the auto accident are the cause of her current condition, that she is receiving compensation from other sources for the same losses or expenses for which Allstate is paying her, and that Allstate's extended PIP coverages are subject to an aggregate benefit limit of $200,000. Allstate seeks no damages or retroactive

3

relief from the payments it has already made to Salazar, only a declaration that it is not liable for further payments.

On July 25, 2006, the Salazar Defendants filed their Answer, Counterclaims and Jury Demand (Dkt. # 13) alleging counterclaims for breach of contract, willful breach of contract, bad faith breach of insurance contract, promissory estoppel, equitable estoppel, and abuse of process. Economic damages claimed by the Salazar Defendants include the difference between the liability limits of Dietler's insurance policy and the amount for which Dietler and Safeco settled the Salazars' claims against Dietler, litigation expenses, and pre- and post-judgment interest. As non-economic damages, defendants allege emotional distress, aggravation, annoyance, fear, anxiety, and inconvenience in amounts to be determined at trial. The counterclaims also seek punitive damages.

## II.  THE MOTION TO DISMISS AND DEFENDANTS' RESPONSE

On August 22, 2006, Allstate filed its motion to dismiss all six of the counter-claims pursuant to F.R.Civ.P. 12(b)(6), asserting that defendants failed to state claims as to which relief may be granted (Dkt. # 16). Allstate essentially argues that the filing of a declaratory judgment action alone does not constitute a breach of contract, a willful breach of contract, or a bad faith breach of an insurance contract, and that its continuing payment of extended PIP benefits without seeking recovery of past payments leaves the Salazar Defendants without any damages on which they can base their counterclaims. Allstate further argues that the defendants' two estoppel claims must be dismissed because their reliance on the letter of November 13, 2002 was

unreasonable as a matter of law.  Regarding the abuse of process claim, Allstate argues that defendants do not state any facts alleging an improper use of the declaratory judgment process.

Defendants' response to the motion to dismiss (Dkt. # 22) argues that the course of conduct constituting the alleged breaches of contract and the acts of bad faith are not limited to the filing of the declaratory judgment action, but arise from a "variety of conduct" apparently including:  the initial denial of the defendants' claim for extended PIP benefits, followed by the agreement to provide such benefits at a time when it influenced a settlement of the claims against Dietler;  the providing of such benefits for more than three years, followed by the reversal of position and an unsuccessful effort by Allstate to settle defendants' claims to extended PIP benefits;  and the resultant filing of the declaratory judgment action (Defendants' Response at 2-4).  The defendants further assert that they have alleged damages from this conduct consisting of both economic and non-economic losses.  They allege economic damages arising from the settlement amount given up in the Dietler case when it was settled in reliance on Allstate's promises, as well as the costs of this litigation.  They allege non-economic damages based on the emotional distress suffered as a result of this dispute.  Finally, defendants contend that they have pled reliance on the specific promise made in the November 13, 2002 letter to provide the extended PIP benefits "not subject to time (except death)."  Finally, they argue that Allstate has abused the litigation process by filing a baseless lawsuit with the improper purpose of forcing Salazar to settle her claim.

## III. STANDARD OF REVIEW

A cause of action will be dismissed for failure to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6) only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). The purpose of Rule 12(b)(6) motions is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In ruling on a motion to dismiss, a court "must construe the complaint in favor of the complaining party," *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998), accept a plaintiff's well-pleaded allegations as true, and construe all reasonable inferences in favor of the plaintiff. *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976).

## IV. ANALYSIS

As the jurisdiction in this case is based on diversity of citizenship between the parties, the substantive law of the State of Colorado, where the acts alleged in the complaint and counterclaims occurred, supplies the elements for determining whether the defendants have stated claims for relief.

A party claiming a breach of contract under Colorado law must allege: the existence of a contract, performance by the plaintiff or justification for not performing,

breach of the contract by defendant, and resulting damages.  *See e.g. Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).  Allstate appears to argue that defendants cannot prove a breach of contract or willful breach of contract as defendants have no actual damages given Allstate's continuing payment of extended PIP benefits through the filing of this lawsuit (Motion at 7-9).  However, as noted above, defendants have alleged economic damages other than the possible loss of extended PIP benefits, including foregoing a potentially more favorable settlement of the Dietler lawsuit and the costs of this litigation.  Moreover, as the court stated in *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1183 (10th Cir. 2005), a decision cited by Allstate, Colorado law permits the award of non-economic damages in cases alleging bad faith breach of insurance contracts, and defendants have alleged non-economic damages including the emotional distress arising from the alleged course of conduct.  Whether such damages can be proven at trial remains to be seen, but at this stage of the case the allegations withstand a motion to dismiss.

Allstate also argues that filing a declaratory judgment action is not *per se* a breach of contract or an act of bad faith, citing to *State Farm Mut. Auto Ins. Co. v. Lee,* 353 F. Supp.2d 1119, 1129 (D. Colo. 2005).  First, as noted above the filing of the declaratory judgment is not the sole conduct alleged here.  Moreover, while Allstate is correct that filing a declaratory judgment action alone may not support a claim for bad faith breach of contract or an anticipatory breach of contract, taking an *unreasonable* position in a declaratory judgment action suffices to support a claim against an insurer for breach of the implied duty of good faith and fair dealing that is an element of every

contract.  *See Hill v. Allstate Ins. Co.,* 2006 WL 173693, at *7-8 (D. Colo. Jan. 24, 2006).  Here, as in *Hill,* defendants allege that Allstate's actions were unjustified and unreasonable (Counterclaim, ¶ 35).  Again, while such allegations remain to be proven at trial, at this stage of the case such allegations suffice to defeat a motion to dismiss.

Allstate seeks to dismiss defendants' estoppel claims asserting that they cannot have reasonably relied on the November 13, 2002 letter to provide for payment of extended PIP benefits for an indefinite period of time and without regard to the $200,000 aggregate cap on such benefits (Motion at 10-11).  Allstate argues such expectation would be unreasonable as a matter of law (*id.* at 11).  Citing to *Empire Cas. Co. v. St. Paul Fire and Marine Ins. Co.,* 764 P.2d 1191, 1198 (Colo. 1988), Allstate argues that "the rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." (*Id.*)

However, here, the estoppel counterclaims are not based on the policy issued by Allstate as much as on the letter written in November 2002, which according to the unrefuted allegations of the counterclaim, states that Leann Salazar was entitled to "[e]xtended PIP Benefits as afforded under the Colorado Auto Accident Reparations Act," including "[w]age loss benefits not subject to time (except death) at the rate of 100% of the first $125 and 85% of the remaining," as well as "[m]edical/rehabilitation coverage not subject to time (except death) or cost limitations except that they shall still be subject to reasonable, necessary and accident relatedness." (Counterclaim, ¶ 14).

Notwithstanding Allstate's assertion that indefinite benefits without regard to an aggregate cap are not provided for in any policy, here the letter appears to offer benefits "not subject to time." In addition, the estoppel claims appear to be premised on the allegations regarding Allstate's actions following the letter, as the counterclaim alleges that Allstate performed in accordance with the letter "for more than three years after the settlement" of the Dietler case. (Counterclaim, ¶ 17).  Whether defendants' reliance on those promises and actions is ultimately found to be reasonable depends on the evidence to be adduced, but for purposes of a motion to dismiss under F.R.Civ.P. Rule 12(b)(6), the claims of estoppel state a claim under Colorado law.

Allstate's motion to dismiss Salazar's claim for abuse of process is granted because the Salazar Defendants fail to allege facts to support the necessary elements of such a claim.  Under Colorado law, a claim for abuse of process requires allegations of at least the following three elements: (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings; and (3) resulting damages.  *James H. Moore & Associates Realty, Inc., v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo. App. 1994)).

Although defendants claim that the ulterior purpose was to force Salazar to settle her claim for extended PIP benefits and that she has suffered damages, defendants have not alleged sufficient facts showing that Allstate has used the declaratory judgment process in a willful manner which is not proper in the regular course of proceedings.  On a number of legal and factual theories Allstate seeks a declaratory judgment that it is no longer required to pay extended PIP benefits to

Salazar.  Allstate correctly argues this is a legitimate legal function of a declaratory judgment action and there is nothing improper about filing such a case after settlement negotiations have been unsuccessful.  Even if Allstate has commenced such an action to promote a settlement with Salazar, settlement itself, a goal of almost all legal actions, cannot alone be deemed an improper use of the process.  Defendants' counterclaim alleges only that Allstate "has made use of legal process," (Counterclaim, ¶ 47) and that the claims asserted by Allstate are "baseless."  That alone is not an abuse of process.  Without more, the claim for abuse of process fails and Allstate's motion is granted as to defendants' sixth counterclaim.

**V.     CONCLUSION**

For the foregoing reasons, Allstate's Motion to Dismiss (Dkt. # 16) is DENIED as to Claims for Relief One through Five in Salazar's Answer, Counterclaims, and Jury Demand (Dkt. # 13), and is GRANTED as to the Sixth Claim for Relief regarding Abuse of Process.  Defendant is directed to file a response to the remaining counterclaims within ten days of this Order.

DATED:  June 13, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge